| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| ÁNGEL L. GONZÁLEZ MERCADO<br><br>Parte Recurrida<br><br>v.<br><br>ROBERTO MOJICA PAZ<br><br>Parte Peticionaria | KLCE202400943 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo<br><br>Caso Núm.: OPE2024-041<br><br>Sobre:<br><br>Ley de la Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores (Ley 121-2019) |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de diciembre de 2024.

Compareció ante este Tribunal la parte peticionaria, el Sr. Roberto Mojica Paz (en adelante, el "señor Mojica Paz" o el "Peticionario"), mediante recurso de *certiorari* presentado el 3 de septiembre de 2024. Nos solicitó la revocación de la *Orden de Protección para el Adulto Mayor* emitida y notificada por el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo (en adelante, el "TPI"), el 5 de agosto de 2024. Mediante el referido dictamen, el TPI le ordenó al Peticionario a abstenerse de molestar, hostigar y acercarse al Sr. Ángel L. González Mercado (en adelante, el "señor González Mercado" o el "Recurrido"), así como comunicarse con éste a través de cualquier medio, por el término de seis (6) meses.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari.*

**I.**

El caso de epígrafe tuvo su génesis el 28 de junio de 2024, con la presentación de una petición de orden de protección, al amparo de la Ley Núm. 121-2019, según enmendada, conocida como la "Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores" (en adelante, "Ley Núm. 121"), por parte del señor González Mercado en contra del Peticionario. Luego de varios trámites procesales impertinentes a la controversia ante nos, la vista sobre la orden de protección se llevó a cabo el 5 de agosto de 2024. Al culminar la audiencia, el TPI expidió una *Orden de Protección Para el Adulto Mayor* en contra del señor Mojica Paz. Mediante la misma, determinó que el Recurrido fue víctima de maltrato por parte del Peticionario, consistente en:

> Haberle causado daño a su salud, bienestar, integridad o a sus bienes.
> Ejercer control emocional o psicológico mediante intimidación, presión, coacción o amenazas o de cualquier otra forma se ha interferido con el ejercicio de los derechos que se le reconocen a la parte peticionaria en esta ley.
> Privar de tener descanso adecuado y disfrutar de un ambiente de tranquilidad y solaz.[1]

Asimismo, tras haber tenido la oportunidad de escuchar a las partes y evaluar la prueba presentada, realizó las siguientes determinaciones de hechos:

> Se expide orden de protección con vigencia de seis (6) meses. Surge de la prueba desfilada que el peticionado es vecino colindante del peticionario. Este ha realizado actos que exponen al adulto mayor al riesgo de sufrir daño a su salud y bienestar. Tales actos consisten en realizar ruidos innecesarios a tempranas horas de la mañana, acelerar su vehículo al frente de la propiedad del peticionario y colocar cámaras de seguridad a una altura tal que afectan su derecho a la intimidad.[2]

Como consecuencia de las referidas determinaciones de hechos, ordenó al señor Mojica Paz a abstenerse de: (1) molestar, hostigar, perseguir, intimidar o amenazar al señor González Mercado, (2) acercarse o penetrar en cualquier lugar donde se encuentre el Recurrido o estar en sus alrededores. También le ordenó remover la cámara de seguridad instalada a una altura de entre 10 a 20 pies. Además, le prohibió al señor

---

[1] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 2.
[2] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 3.

Mojica Paz comunicarse con el señor González Mercado, a través de cualquier método de comunicación. Inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

PRIMER ERROR

Erró el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo, al expedir y/o conceder la orden de protección al amparo de la Ley 121-2019 ya que en la apreciación de la prueba se alejó de la realidad fáctica del caso por no existir elementos para expedir la orden de protección al amparo de la Ley 121-2019 y contrario a derecho.

SEGUNDO ERROR

Erró el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo, en la apreciación de la prueba a [sic] conceder la orden de protección al amparo de la Ley 121-2019, a la luz de la prueba desfilada, por lo que medió pasión, perjuicio, parcialidad y/o error manifiesto.

El 17 de octubre de 2024, emitimos *Resolución* mediante la cual concedimos una serie de términos conducentes al perfeccionamiento del recurso de epígrafe. Ha transcurrido en exceso del plazo concedido a la parte recurrida para presentar su alegato en oposición. En vista de lo anterior, resolvemos el presente recurso sin el beneficio de su comparecencia.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711. La Regla 52.1 de Procedimiento Civil, dispone que, como norma general, este Tribunal de Apelaciones solo expedirá dicho recurso en dos situaciones particulares, siendo estas: (1) cuando se recurra de una resolución u orden bajo las Reglas 56 y 57; o (2) cuando se recurra de la denegatoria de una moción de carácter dispositivo. 32 LPRA Ap. V, R. 52.1.

Sin embargo, como excepción a lo mencionado anteriormente, este foro apelativo intermedio podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de lo siguiente: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia; y (5) en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Íd.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Banco Popular de Puerto Rico v. Gómez Alayon, 213 DPR ___ (2023); 2023 TSPR 145. Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la referida Regla establece los siguientes criterios a evaluar:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es,

para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La población puertorriqueña de adultos mayores es considerada parte de los sectores vulnerables de nuestra sociedad, por lo que necesita ser resguardada por el Estado. Así, la Ley Núm. 121, *supra*, fue promulgada con el fin ulterior de ofrecerle una mejor calidad de vida a dicha comunidad, procurando su completa integración a la sociedad. *Véase*, Exposición de Motivos de la Ley Núm. 121. De igual manera, entre sus objetivos, se encuentra el "establecer un orden público e interés social al crear las condiciones necesarias para lograr la protección, atención, bienestar y desarrollo de los adultos mayores a partir de los sesenta (60) años de edad". Íd.

Para lograr el referido propósito, dicho estatuto permite que cualquier persona adulta mayor que haya sido víctima de abandono, maltrato o de conducta constitutiva de delito, según el Código Penal de Puerto Rico, radique una orden de protección en el tribunal. 8 LPRA sec. 1519. Para solicitar una orden de esta naturaleza, no es necesario que se haya presentado una denuncia o acusación previo a la petición. Íd. El foro primario puede emitir una orden de protección *ex parte* una vez haya determinado que existen motivos suficientes para creer que la parte que lo solicita ha sido víctima de maltrato físico, mental o psicológico, hostigamiento, coacción, daño emocional, intimidación o cualquier otro

delito. Íd. Entre las prohibiciones que puede disponer la orden de protección, se encuentran las siguientes:

(b) Ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de los derechos que se le reconocen en esta Ley.

[…]

(c) Ordenar a la parte peticionada abstenerse acercarse o penetrar en cualquier lugar donde se encuentre la parte peticionaria cuando a discreción del tribunal dicha limitación resulte necesaria para prevenir que la parte peticionada moleste, intimide, amenace, perturbe la tranquilidad o de cualquier otra forma interfiera con la parte peticionaria. 8 LPRA sec. 1519 (b) y (c).

En línea con lo anterior, la Ley Núm. 121, *supra*, describe el acto de maltrato como un trato cruel o negligente hacia un adulto mayor por parte de otra persona, que le causa daño o lo expone al riesgo de sufrir daño ya sea a su salud, su bienestar integral o a sus bienes. 8 LPRA sec. 1513 (27). Asimismo, define el término abandono como una modalidad de maltrato que ocurre cuando una persona responsable de una persona adulta mayor lo deja o deserta en cualquier lugar con el objetivo consciente de desampararlo. 8LPRA sec. 1513 (1). En resumen, toda persona que incurre en maltrato, abandono o cualquier conducta tipificada como delito por nuestro Código Penal, está sujeta a que el Tribunal de Primera Instancia expida una orden de protección en su contra, garantizando así, el bienestar integral de la población de adultos mayores.

**C.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida

consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y

jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

En el presente caso, el señor Mojica Paz nos solicitó la revocación de la *Orden de Protección para el Adulto Mayor* interpuesta en su contra, a través de la cual se le ordenó abstenerse de molestar, hostigar y acercarse al señor González Mercado o comunicarse con él por cualquier medio, por un plazo de seis (6) meses. En síntesis, plantea que el TPI se alejó de la realidad fáctica del caso al expedir la referida orden, dado a que no se configuraron los elementos necesarios para emitirla y que dicho foro incurrió en pasión, perjuicio, parcialidad y error manifiesto al evaluar la prueba presentada.

Surge del expediente ante nuestra consideración que el 28 de junio de 2024, el Recurrido presentó una petición de orden de protección al amparo de la Ley Núm. 121, *supra*, en contra del Peticionario. La vista sobre la referida solicitud se llevó a cabo el 5 de agosto de 2024. Allí, declararon bajo juramento las siguientes personas: (1) el señor González Mercado y el (2) señor Mojica Paz. En lo aquí pertinente, el señor González Mercado testificó, entre otras cosas, lo siguiente:

P Don Angel [sic]¿Qué edad usted tiene?
R 68.[3]

[…]

P "Okay". Mire, Don Angel [sic] y con relación a esa Orden de Protección que usted la solicita cuando estaba en el Tribunal Cabo Rojo. Explíquele a la señora Juez por qué usted pide esta Orden de Protección en contra del señor Don Roberto

---

[3] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 8.

Mojica. ¿Qué situaciones han ocurrido ahí que usted decide venir aquí al Tribunal Cabo Rojo a pedir esta Orden de Protección?

R Eh, comenzando con…, la situación hace como un año, este señor se dedica a (Ininteligente) alborotando…, y amedrentando a uno innecesariamente con los vehículos (Ininteligible) que tiene, pues esa es una de las situaciones donde comienza la situación que yo le preguntaba el por qué. Luego de esto, él continúa haciendo otras cosas entre ellas, poniendo luces a mi cuarto, una lámpara que no entiendo por qué ahí, eh, lo último que hizo fue poner una cámara que estaba grabando en mi cuarto, no entiendo, eh, puso una cámara tiene dos querellas porque 24 horas unas alarmas…, yo no puedo dormir con una alarma puesta 24 horas, pues, tampoco (Ininteligible) porque él alega que vive ahí, y él no vive ahí.

P Vamos por parte. Don Angel [sic]. Usted es vecino de Don Roberto?

R Si.

P Pero, vecinos ¿cómo? El vive al frente, al lado…

R En la esquina, al final del cuarto de hacer ejercicio, que a las 5:00 de la mañana se levanta los fines de semana a hacer ejercicio y pone una música como si fuera tumba coco, pues ahí, en esa esquina de ese cuarto, en la otra esquina estoy yo.

P ¿Quiere decir que ustedes son vecinos colindantes?

R Sí.[4]

[…]

P Esa foto, Don Ángel ¿quién está conduciendo ese vehículo?

R El caballero.

P Y usted fue el que tomó esa foto.

R Sí.

P Cuando usted tomó esa foto de ese vehículo ¿qué estaba haciendo él mientras conducía ese vehículo?

R Acelerando el vehículo por ahí pa' abajo y haciendo alboroto acostumbrado.

P ¿Cuál es el alboroto acostumbrado?

R O sea…, él (Ininteligible) vehículo y acelerarlo frente a su casa, eh, (Ininteligible).

P Mire ¿quién aceleró un vehículo al frente de su casa?

R El caballero.

P ¿Cómo usted lo sabe?

R Porque yo estaba allí al frente.

P ¿Y usted lo vio?

R Sí.

[…]

P Estas fotos que usted tomó ese día, ¿fue el día que él estaba acelerando el vehículo al frente de su casa?

R  Sí.

P Don Ángel, en ésta otra fotografía. ¿Qué es lo que muestra aquí?

R Eso es un foco que él tiene encima de la casa que alumbra mi cuarto (Ininteligible) y desconozco la razón de ser de esos focos.[5]

[…]

P ¿Dónde están ubicados los focos?

R Encima de la casa.

P ¿En qué?

R En una estructura en cemento.

---

[4] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 9-11.
[5] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 15.

P Esos focos están dirigidos hacia ¿Dónde?
R Hacia mi cuarto.
P ¿Con que frecuencia están esos focos prendidos?
R Los fines de semana, que es cuando (Ininteligible) visita.
P ¿Y por cuanto tiempo están prendidos esos focos?
R A veces están toda la noche.
P de qué hora más o menos…, (Ininteligible) usted indica más o menos.
R (Ininteligible) 9:00 de la noche prende los focos…[6]

[…]

P Mire Don Ángel, ¿usted tiene alguna queja sobre estos focos?
R Sí.
P ¿Cuál es?[7]

[…]

R Porque me está alumbrando los focos, porque imagínese.
P ¿Y eso le afecta a usted?
R Sí.
P ¿Cómo?
R Porque no me permite descansar.[8]

[…]

P Don Angel en esta fotografía, en esta fotografía ¿Qué es lo que muestra?
R El cuarto de ejercicios donde él pone la música, hace ejercicios a las 5:00 de la mañana.[9]

[…]

P Esta foto… [suena un celular]. Y esa música, ¿a qué nivel usted la…, lo escucha allí?
R Me levanta, me despierta. Si estoy dormido, me despierta.[10]

[…]

P Don…,esta foto que yo le estoy mostrando ahora aquí, esa foto ¿Qué muestra?
R Esa es la cámara que (Ininteligible) de su casa para…, (Ininteligible) estarme velando todo el tiempo, porque yo me siento incomodo con esa cámara ahí.
P Con esa cámara.
R El tiene cámaras puestas alrededor de su casa. ¿Para qué quiere esa cámara ahí?
P Esta cámara, si usted lo sabe, eh, ¿hacia donde esta enfocada? Si usted lo sabe.
R Para mi…, para mi cuarto, para mi casa.
Eso está para la parte de atrás, no esta ni siquiera para la parte de al frente de la casa.
P ¿En que momento, en que momento, si alguno Don Angel, ¿en que momento, si alguno Don Roberto se acercó a usted como vecino para decirle que por razones de seguridad el iba a poner unas cámaras de seguridad?
R En ningún momento.[11]

---

[6] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 16-17.
[7] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 18.
[8] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 18.
[9] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 19.
[10] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 19.
[11] *Véase*, Transcripción de la vista oral del 5 de agosto de 2024, pág. 19.

Tras examinar los testimonios presentados durante la referida vista, el foro primario concluyó que el señor Mojica Paz ha realizado actos que exponen al adulto mayor al riesgo de sufrir daño a su salud y bienestar general, consistentes en realizar ruidos en la mañana, acelerar su auto al frente de la propiedad del señor González Mercado y colocar cámaras de seguridad a una altura que afecta el derecho a la intimidad del Recurrido. En sintonía con ello, autorizó la expedición de la *Orden de Protección Para el Adulto Mayor* en contra del señor Mojica Paz y le ordenó lo siguiente:

Se ordena al peticionado a remover la cámara de seguridad colocada entre 10 a 20 pies de altura
Ordenar a la parte peticionada a abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de los derechos que le reconocen a la parte peticionaria en esta Ley.
Ordena a la parte peticionada abstenerse de acercarse o penetrar en cualquier lugar donde se encuentre la parte peticionaria o estar en sus alrededores.
Prohibe a la parte peticionada comunicarse con la parte peticionaria por cualquier medio ya sea verbal, escrito, telefónico o cualquier otro método de comunicación; por si misma o a través de terceras personas.[12]

Tras examinar los documentos que constan en el legajo apelativo, incluyendo la *Orden de Protección para el Adulto Mayor* y la transcripción de la prueba oral presentada durante la vista, no encontramos base que respalde la expedición del presente recurso discrecional. Evaluados los hechos particulares de este caso, resolvemos que el TPI actuó dentro de los límites de su discreción al determinar que el señor Mojica Paz ha llevado a cabo actos que ponen en riesgo la salud y bienestar general del señor González Mercado, un adulto mayor protegido por la Ley Núm. 121, *supra*, y que resulta justificada la emisión de una orden de protección en su contra. Esto se desprende de manera evidente del testimonio bajo juramento del Recurrido, quien afirmó que el Peticionario realiza ruidos innecesarios durante las primeras horas de la mañana, acelera su vehículo frente a su propiedad y dispone de cámaras de seguridad a una altura que vulnera su derecho a la intimidad. Nos resulta indudable que dichas conductas comprometen la salud y el bienestar general del señor González Mercado, afectando su capacidad para descansar adecuadamente y generándole un

---

[12] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 3.

estado de incomodidad que incide de manera negativa en su salud física y emocional. Tales actuaciones, por su naturaleza, se enmarcan dentro de la definición de maltrato establecida por la Ley Núm. 121, *supra*.

En vista de lo anterior, somos de la opinión de que el caso en cuestión no satisface ninguno de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, que exigiría la expedición del auto de *certiorari* para reemplazar el criterio del TPI por el nuestro. La determinación tomada por el foro de instancia no fue arbitraria ni constituyó un abuso de su discreción.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Resolución*, *denegamos* la expedición del auto de *certiorari* presentado ante nuestra consideración.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones